IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LEAF Funding, Inc. f/k/a Netbank Business Finance, a Delaware corporation | ) ) ) | FILED: JULY 2, 2008<br>08CV3790<br>JUDGE GRADY |
| Plaintiff, | ) ) | MAGISTRATE JUDGE ASHMAN<br>MKH |
| v. | ) No.<br>) ) | |
| Integrated Portfolio Management, Inc. f/k/a First Credit Services Incorporated, an Illinois Corporation d/b/a Stanley Weinberg & Associates, Earl Shields and Liliana Shields | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

Plaintiff LEAF Funding, Inc. f/k/a Netbank Business Finance, ("LEAF") by its attorneys, for its complaint against Defendants Integrated Portfolio Management, Inc. f/k/a First Credit Services Incorporated, an Illinois Corporation d/b/a Stanley Weinberg & Associates ("Integrated"), Earl Shields ("Earl") and Liliana Shields ("Liliana") states as follows:

## PARTIES

1.     LEAF is a Delaware corporation with its principal place of business located in Philadelphia, Pennsylvania. LEAF was formerly known as Netbank Business Services

2.     On information and belief, Integrated is an Illinois corporation with its principal place of business located in Lombard, Illinois. On information and belief, before approximately August, 2007, Integrated was known as First Credit Services Incorporated. Both before and after August, 2007, Integrated did business under the assumed name of Stanley Weinberg & Associates.

3. On information and belief, Earl is a citizen of the State of Illinois, maintaining his domicile in Naperville, Illinois.

4. On information and belief, Liliana is a citizen of the State of Illinois, maintaining her domicile in Naperville, Illinois

## JURISDICTION AND VENUE

5. Jurisdiction is predicated on 28 U.S.C. § 1332(a)(1) in that each Defendant is a citizen of the State of Illinois and Plaintiff is a citizen of a State other than Illinois, and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because all Defendants reside in this district.

## COUNT I

### (Breach of Contract)

7. On or about March 23, 2007, Integrated entered into a Master Lease Agreement No. 37564 and Payment Schedule No. 1 with Cypress Financial Corp. ("Cypress") (the "Agreement") whereby Integrated agreed to lease certain described equipment (the "Equipment") and to pay Cypress monthly payments as set forth in the Agreement. A true and correct copy of the Agreement is attached hereto as Exhibit A.

8. In order to induce Cypress to enter into the Agreement, Earl and Liliana each executed a guaranty (the "Guaranty") whereby Earl and Liliana each unconditionally guaranteed the full performance by Integrated of all of the terms and conditions of the Agreement. A copy of the Guaranty is attached hereto as Exhibit B.

9. On or about March 28, 2007, Cypress assigned all of its right, title and interest in

the Agreement and the Guaranty to LEAF. A copy of the assigment is attached hereto as Exhibit C. LEAF is the bona fide owner of the claim sued upon herein.

10. The Agreement required monthly payments for a period of thirty-six (36) months and provided that, in the event of a default in the payment of any payment required therein, the holder of the Lessor's interest could terminate the Agreement and declare the entire balance of installment payments due under said Agreement immediately due and payable.

11. On or about May 20, 2008, Integrated defaulted under the terms of the Agreement by failing to make the payments required to be made, and Plaintiff has accelerated the balance of amounts due under the Agreement.

12. Plaintiff has made demand upon Integrated, Earl and Liliana, and each of them for the payments due and owing under the terms of the Agreement and the Guaranty, but Integrated, Earl and Liliana, and each of them have failed and refused to pay same.

13. Plaintiff and any of its predecessors in interest have performed all terms and conditions required of them to be performed under the Agreement and the Guaranty.

14. After applying all just credits and deductions, there is due and owing to Plaintiff the sum of $183,507.92, exclusive of interest and costs, as of May 20, 2008. Pursuant to the terms of the Agreement and Guaranty, Integrated, Earl and Liliana, and each of them are also obligated to pay all late charges and other costs of expenses of collection, including attorney's fees, together with interest at the rate of 1.5% per month.

WHEREFORE, LEAF Funding, Inc. f/k/a Netbank Business Finance, Plaintiff herein, respectfully prays that a judgment be entered in its favor and against Defendants Integrated Portfolio Management, Inc. f/k/a First Credit Services Incorporated, an Illinois Corporation d/b/a

Stanley Weinberg & Associates, Earl Shields and Liliana Shields, jointly and severally, in the amount of $180,507.92, plus costs, late charges, interest, reimbursable expenses, and attorney's fees and for such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

LEAF Funding, Inc. f/k/a Netbank Business Finance

By: __/s/ Kenneth B. Drost__
One of its Attorneys

Kenneth B. Drost, Esq.
Kenneth B. Drost, P.C.
111 Lions Drive, Suite 206
Barrington, Illinois 60010
(847) 381-1070
Attorney No. 03123292

**EXHIBIT A**

**MASTER LEASE AGREEMENT**

Case 1:08-cv-03790   Document 1   Filed 07/02/2008   Page 5 of 17

00037564

MASTER AGREEMENT NO. _____

| BORROWER AND DEBTOR | LENDER AND SECURED PARTY | DEBTOR'S INITIALS |
|---|---|---|
| FIRST CREDIT SERVICES INCORPORATED DBA STANLEY WEINBERG & ASSOCIATES<br>800 SPRINGER DRIVE<br>LOMBARD, IL 60148 | CYPRESS FINANCIAL CORP.<br><br>19613 81ST AVE SOUTH #A<br>KENT, WA 98032 | (X) [signature] |

1. For your convenience, this Master Agreement (this "Agreement") has been written in "Plain English." The words "you" and "your" refer to the Borrower and Debtor, its permitted successors and assigns. The words "we" "us" and "our" refer to the Lender and Secured Party, its successors and assigns. We agree to make a loan to you as described in each payment schedule executed from time to time by you and us and attached to this Agreement (each, a "Schedule"). Each Schedule shall expressly incorporate the terms of this Agreement and shall constitute a separate loan along with any other writing expressly incorporated into this Agreement or the applicable Schedule. In the event of any conflict between the language of this Agreement and the Schedule, the language of the Schedule shall prevail. This Agreement is not a legal commitment to lend money and we shall have no obligation to enter into any Schedule. This Agreement shall constitute a binding agreement between you and us when we execute the Agreement.

2. As Borrower and Debtor, you unconditionally promise to pay to our order, or the order of our successors or assigns, the principal sum specified in the Schedule plus interest in the amounts and at the times set forth in the Schedule commencing on the date the Schedule is accepted and signed by us and continuing as set forth therein without need of an invoice. **Your obligations hereunder, including without limitation, your obligations to pay all amounts due hereunder, are absolute, unconditional, non-cancelable, and not subject to cancellation, termination, modification, repudiation, abatement, reduction, diminution, defense, counterclaim, recoupment or set-off for any reason whatsoever.**

3. For valuable consideration and to secure the prompt payment and performance in full of all of your obligations to us hereunder, you hereby grant to us and so pledge and assign to us a first priority security interest under the Uniform Commercial Code in the applicable state ("UCC") in the following properties, assets and rights, wherever located, whether now owned or existing or hereafter acquired or arising, and howsoever your interest therein may arise or appear (whether by ownership, lease, security interest, claim, or otherwise) (collectively the "Collateral"): (a) all inventory, equipment and fixtures purchased with proceeds of this loan; (b) any other collateral set forth in Exhibit A to the applicable Schedule; and (c) any and all proceeds of any of the foregoing, including insurance proceeds or other proceeds from the sale, destruction, loss, or other disposition of any of the foregoing, and sums due from a third party who has damaged or destroyed any of the foregoing or from that party's insurer, whether due to judgment, settlement or other process. As additional security for your obligations under each Schedule, you grant to us a security interest in all of the Collateral under each and every Schedule (the "Other Schedules") but only to the extent and so long as we or our assignee are also the Lender and Secured Party with respect to such Other Schedules. You represent, warrant, covenant and agree that: (i) you are and will be the owner of the Collateral, free of all security interests, liens and encumbrances other than the security interest in favor of us and any existing liens consented to by us in writing; (ii) it is the intention of the parties hereto that all tangible Collateral shall consist solely of personal property, and that the same shall not constitute fixtures; (iii) you shall: (A) keep all tangible Collateral in good condition and repair; (B) immediately notify us of any material damage to any such Collateral; (C) not permit any Collateral to be used or kept for any unlawful purpose or in violation of any federal, state or local law; (D) permit us access to the Collateral at all reasonable times; (E) be liable for any expenditures we make to maintain and preserve the Collateral or our rights thereto, including without limitation, taxes, levies, insurance, repairs, attorney's and accountant's fees and expenses, and for the collection, repossession, holding, preparation, and sale or other disposition of the Collateral; and (F) not move any Collateral from its current location without our prior written consent

4. You additionally represent, warrant, covenant and agree that: (a) the information you provided for the underwriting of this loan was full, true and correct in all respects; (b) the proceeds of the loan shall not be used to purchase real estate or an interest therein;

(c) the proceeds of the loan shall be used solely for business or commercial purposes and **not** for personal, family, household or agricultural purposes; (d) your execution, delivery, and performance of this Agreement and any related documents, and the grant of the security interest in the Collateral to us, are not in contravention of law or the terms of your organizational and governing documents, or any contract or agreement to which you are a party and this Agreement constitutes your legal, authorized, valid, and binding obligation, enforceable in accordance with its terms; and (e) there are no actions, proceedings, or investigations pending or threatened against you, and there are no judgments, federal or state tax liens or other liens, security interests or encumbrances against you, or your assets except as disclosed herein.

5. You agree, if applicable, to keep the Collateral insured against loss, damage and destruction, providing "special form" insurance coverage, including theft ("Property Insurance") in an amount equal to its replacement cost with such companies, and in such form, amounts and coverages as are acceptable to us. We may on reasonable notice require you in writing to change such form, amount, coverages or company. Such insurance must name us or our assignee as loss payee on a 'Lender's Loss Payable' endorsement (ISO form BP 12 03 or CP 12 18 or their equivalent), and must include provision for thirty (30) days prior written notice to us of cancellation. You agree to provide us with written evidence of Property Insurance (using ACORD 28 or its equivalent) ("Evidence") no later than thirty (30) days from the commencement of this Agreement and within thirty (30) days of any subsequent request from us. In the event you do not provide us with satisfactory written Evidence of Property Insurance as described above, or if such Insurance terminates for any reason without reinstatement, you agree that we shall have the right to charge you an administrative fee, which you agree to pay to us, equal to five (5) percent of each of your monthly payments which does not provide insurance nor relieve you of any responsibility to make all payments in the event of an uninsured loss. We agree to discontinue billing Insurance Charge upon receipt of satisfactory written Evidence of Property Insurance. You hereby assign to us, as additional security for the payment of the amounts due hereunder, any and all proceeds and all other rights you have under all policies of insurance or Substitute Insurance covering the Collateral, and you hereby direct the issuer of any such policy to pay directly to us any such monies. If you receive such monies, you agree to hold them in trust for our benefit.

6. If you at any time fail to perform or observe any agreement herein, we may (in your name and on your behalf or, at our option, in our own name), but are not obligated to, perform and take any action, which we may deem necessary or desirable to cure or correct such failure. You irrevocably authorize and appoint us (and our designee) as your attorney-in-fact to execute, endorse or otherwise sign any instrument, document, statement, communication or record desirable to protect or preserve our interest herein, in the Collateral or in any insurance or other proceeds of the Collateral or to correct any errors or omissions herein or in any related document. This power, being coupled with an interest, shall be irrevocable for the term of this Agreement. You further hereby irrevocably authorize us at any time and from time to time to file in any filing office in any UCC jurisdiction any initial financing statements and amendments thereto that describe the Collateral as all of your assets or words of similar effect, regardless of whether such description is greater in scope than the Collateral pledged to us hereunder. If you are a Franchise (Borrower), you further authorize us to share information regarding the Agreement including payment history, with your Franchisor and/or Landlord.

7. Any of the following will constitute an event of default hereunder: (a) you fail to pay us any amount when due; (b) you breach your obligations under paragraph 5 or 10 hereof; (c) you breach any representation, warranty or covenant or fail to perform any other covenants, promises or obligations under: (i) this Agreement, (ii) any Schedule; (iii) any other agreement entered into by you and us or by you and another party if such other agreement is assigned to, held, or serviced by us; (iv) any lease or mortgage affecting the real property where any Collateral is located; (v) any franchise agreement between

00037564

you and any franchisor; or (vi) any agreement for money borrowed or the lease of real or personal property; (d) you legally dissolve, are adjudicated insolvent or bankrupt or cease to pay your debts as they mature, (e) you make a general assignment for the benefit of or enter into an arrangement with creditors, (f) you apply for or consent to the appointment of a receiver, trustee or liquidator of you or a substantial part of your property, (g) you take action to dissolve or terminate your legal existence, or authorize or file a voluntary petition in bankruptcy or under any similar law, consent to such a petition, or suffer such a petition or proceeding to be instituted against you which remains undismissed for a period of sixty (60) days; (h) if an individual, you die or become legally incompetent; (i) you default under any lease or mortgage applicable to the real estate where the Collateral is located; (j) you merge or sell substantially all of your assets or change your legal name, state of organization or organizational identification number (including, if you are an individual, you incorporate as a corporation, limited liability company, limited partnership or any other entity) without our prior written consent; (k) if there is any material deterioration, impairment, decline in value, or material adverse change in your assets (including, any part of the Collateral), your financial or other condition, or the assets or financial or other condition of any guarantor; (l) you file, record or communicate or attempt to file, record or communicate a UCC termination statement without our prior written consent; (m) we, in good faith, deem ourselves to be insecure; and (n) any of the preceding events occurs with respect to a guarantor, endorser, surety, or accommodation party of any of your obligations to us.

8. If you are in default, at our election, we can: (a) require you to pay to us in immediately available funds, as liquidated damages for the loss of our bargain hereunder and not as a penalty, an amount equal to: (i) all outstanding payments and other sums due and payable hereunder as of the date of the default; plus (ii) the present value of all future payments and other sums due hereunder discounted to present value at a rate equal to four percent (4%) per annum; plus (iii) all costs and expenses we incur in connection with any repossession, recovery, storage, repair, sale or other disposition of, or realization upon, the Collateral; plus (iv) interest on all of the foregoing at a rate of one and one-half percent (1.5%) per month until paid; (b) take possession of any Collateral without prior notice or process of law and sell or otherwise realize upon such Collateral in a commercially reasonable manner and apply the proceeds to your obligations hereunder with you remaining liable for any deficiency; (c) require you to assemble the Collateral, and make it available to us at any location selected by us; (d) utilize any remedy available under the Uniform Commercial Code and any other remedies we may have at law, in equity or otherwise; and (e) seize all books and records pertaining to the Collateral. If we pursue any such remedies, you agree to pay our reasonable attorneys' fees and costs, including court costs, repossession, storage and collection costs, non-sufficient funds charges, and similar charges. You hereby waive, to the extent permitted by law, demand, diligence, presentment, notice of dishonor, protest, notice of acceleration and all other notices and rights of every kind in connection with this Agreement or any other document. Except as may be prohibited by applicable law, all of our rights and remedies, whether evidenced by this Agreement, or any other documents shall be cumulative and may be exercised singularly or concurrently. Our election to pursue any remedy will not constitute a waiver of our rights to pursue other remedies and an election to make expenditures or to take action to perform any of your obligations hereunder after your failure to perform, shall not affect our right to declare a Default and exercise our remedies.

9. If any part of any amount due is not paid when due, you agree to pay a late charge equal to the lesser of ten (10) percent of the past due amount, or the maximum amount permitted by applicable law. If you agreed to make your payments via mandatory Automated Clearing House or similar processes and fail to do so or cause such processes to be discontinued, you agree that your monthly amount due will be increased by a service fee of ten dollars per payment. If you deposited a Security Deposit with us, it secures the full performance of all of the terms and conditions of this Agreement and we may apply all or a portion of the Security Deposit to any of your obligations hereunder. If we apply the Security Deposit to any of your obligations, you shall immediately restore the Security Deposit to its full amount. If a non-refundable processing and filing fee has not been remitted by you prior to inception of this Agreement, we shall deduct from the Security Deposit a fee of one hundred and twenty-five dollars or three hundred dollars if the Collateral includes titled equipment. The Security Deposit may be commingled with our other funds and shall not bear interest. After all amounts due under this Agreement have been received by us, any Security Deposit remaining shall be remitted to you.

10. **You have no right to sell, transfer, assign, lease, pledge, encumber, abandon or transfer possession (each, a "Transfer") of any of the Collateral or any of your rights, title or interest in this Agreement and any such attempted Transfer shall be null and void.** We may, without any notice to you or your consent, Transfer any of our rights under this Agreement, any Schedule or any Collateral and, upon notice, you shall render all performance hereunder to such transferee. You further agree that any such transferee shall have the rights and benefits assigned, but none of the obligations, and will not be subject to any claims, defenses or set-off that you may have against us.

11. This Agreement shall be interpreted and all rights and liabilities of the parties arising under or related to this Agreement shall be determined and governed as to validity, interpretation, enforcement and effect, by the laws of the State of South Carolina, applied without giving effect to conflict-of-laws principles. Without limiting our right to bring any action or proceeding against you in the courts of other jurisdictions, you hereby irrevocably submit to the jurisdiction of any State or Federal court located in the County of Lexington, South Carolina. **Both you and we expressly waive any right to a trial by jury.**

12. If any provision hereof or any remedy herein provided is found to be invalid under any applicable law, such provision shall be inapplicable and deemed omitted but all the remaining provisions and remedies shall be in effect in accordance with the intent hereof. You agree and acknowledge that; (a) the terms and conditions indicated above and on the first page are a complete and exclusive statement of our agreement and the same may be modified only by a written agreement signed by all parties hereto and not by course of performance; (b) you have retained a full and complete copy of this Agreement; (c) your obligations will be binding upon your successors, assigns, heirs and legal representatives; (d) any delay or failure to enforce our rights under this Agreement or any Schedule does not prevent us from later enforcing any rights we may have and our waiver of any provision hereunder on any occasion shall not constitute a waiver at any other time or of any other matter.

13. It is the express intent of the parties not to violate any applicable usury laws or to exceed the maximum amount of interest permitted. In the event a court declares that the rate is excessive, any such excess payment will be applied to principal in inverse order of maturity, and any remaining excess will be refunded to you following payment in full hereunder.

| Borrower and Debtor: | Lender and secured Party: |
|---|---|
| FIRST CREDIT SERVICES INCORPORATED DBA STANL | CYPRESS FINANCIAL CORP. |
| By: (X) _[signature]_ | By: _[signature]_ |
| Its: X PRESIDENT | Its: _[illegible]_ |
| Date: X 3/19/07 | Date: 3/23/07 |

Payment Schedule No. __1__ to Master Agreement No. _____
Dated: _____ between   **00037564**
CYPRESS FINANCIAL CORP. (the "<u>Secured Party</u>") AND

## FIRST CREDIT SERVICES INCORPORATED DBA STANLEY WEINBERG & ASSOCIATES (the

This Payment Schedule is attached to and made a part of the Finance Agreement referenced above and incorporates by reference all the terms and conditions of that Agreement and any amendments thereto. Debtor understands that, upon Secured Party's acceptance of this Payment Schedule, Secured Party or its assignee will advance the principal loan amount to Debtor and/or certain payees, and Debtor's non-cancelable payments and other obligations under the Agreement as to this Schedule shall then commence.

Debtor hereby agrees to make a total of __36__ payments in the amounts and at the times set forth below:

| Payment Schedule | Amounts due with this Agreement | |
|---|---|---|
| Payments __1 - 36__ @ $__8,514.29__ each, followed by; | First Payment: | $ __8,514.29__ |
| Payments _____ @ $_____ each. | Security Deposit: + | $ __8,514.29__ |
|  | Amount due on Date Hereof: | $ __17,028.58__ |

Payments shall be due each  [X] Monthly   [ ] Quarterly   [ ] Other (   ).

**BOTH PARTIES HAVE READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS PAYMENT SCHEDULE AND AGREE TO ITS TERMS.**

Borrower and   FIRST CREDIT SERVICES                 Lender and Secured Party: CYPRESS FINANCIAL CORP.
Debtor:        INCORPORATED DBA STANLEY
By: X _[signature]_                                  By: _[signature]_
Its: X PRES                                          Its: _TYLER_
Date: X 3/19/07                                      Date: 3/25/07

### Pay Proceeds Direction

By signature below, Debtor authorizes and directs Secured Party to make disbursement(s) of the amounts loaned under the terms and conditions of this Payment Schedule to the Master Agreement, and;

1. Debtor hereby irrevocably instructs Secured Party to disburse the loan proceeds in the respective amounts to the payees designated below.
2. Disbursement by Secured Party in accordance with the foregoing instructions shall be and constitute payment and delivery to, ar receipt by Debtor, of any and all of such proceeds of the principal loan amount.

| Amount to disburse: | Payees: |
|---|---|
| $ __252,350.00__ | Payee name: __DIAL CONNECTION__ |
| $ _____ | Payee name: _____ |
| $ _____ | Payee name: _____ |
| $ _____ | Payee name: _____ |
| $ _____ | Payee name: _____ |

Signature X _[signature]_ _____

I hereby authorize, in my absence, X __No__ _____ to orally verify my permission to disburse funds.

DocsOnline v2.0   12:00:44 PM   2/16/2007

_[Handwritten margin notes:]_ Next due 4/20. TT Earl Shields. Ok to release 50% only. Verified pymts, terms, location and billing. Verified that loan begins in full and can not be ... 2-21-07 .47...

Attachment to EXHIBIT "A"

Payment Schedule No. ___1___ to Master Agreement No. ___000 37564___
Dated: _____ between

Secured Party: CYPRESS FINANCIAL CORP. _____ and,

Debtor: FIRST CREDIT SERVICES INCORPORATED DBA STANLEY WEINBERG & _____

Location: 800 SPRINGER DRIVE _____

| LONBARD | IL | 60148 |
|---|---|---|
| City | State | ZIP |

| Quantity | Description |
|---|---|
| 1 | TELEPHONY SERVER - INDUSTRIAL GRADE RACK MOUNT TELEPHONY SERVER DUAL XEON 2.4, 4GB RAM, 3-120HD RAID 5, 1 120GB HOT SWAP<br>Serial Number: |
| 1 | RECORDING SERVER - XEON 2.4, 2GB RAM, 8 320GB HD RAID 5<br>Serial Number: |
| 4 | AGENT/LINE SIDE CONNECTIVITY - DIALOGIC 96 PORT T-1 - 4 T1<br>Serial Number: |
| 10 | AGENT/LINE CONNECTIVITY - DIALOGIC 48 PORT T1 - WITH CONFERENCE<br>Serial Number: |
| 300 | CALL CENTER SOFTWARE - DESKTOP AGENT USER LICENSE, DIGITAL VOICE RECORDING, INTEGRATED EMAIL, 15-AGENT MONITORING, COACHING & RECORDING<br>Serial Number: |
| 460 | CALL CENTER SOFTWARE - DIAL CONNECTION TELEPHONY SERVER ENGINE<br>Serial Number: |
| 1 | SERVER SOFTWARE - WINDOWS 2000 ADVANCED SERVER<br>Serial Number: |

This Collateral Schedule is attached and made part of the above referenced Agreement and constitutes a true and accurate description of the Collateral.

(X) _____ EARL SHIELDS _____ PRESIDENT (X) 3/19/07
Signature           Print Name                         Title           Date

DocsOnline v2.0  11:49:48AM  2/15/2007

(Specific Assets Only)

EXHIBIT "A"

Payment Schedule No. \_\_\_1\_\_\_ to Master Agreement No. \_\_\_00037564

Dated: _____ between

CYPRESS FINANCIAL CORP. (the "Secured Party") AND

**FIRST CREDIT SERVICES INCORPORATED DBA STANLEY WEINBERG & ASSOCIATES**

A. Without in any way limiting the description of the Collateral in the Master Agreement referenced above, the term "Collateral" shall also include the following properties, assets and rights, wherever located, whether now owned or existing or hereafter acquired or arising, and howsoever Debtor's interest therein may arise or appear (whether by ownership, lease, security interest, claim, or otherwise): (a) **See Attachment** and: (b) all Supporting Obligations, records and data relating to any of the foregoing, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Guarantor's right, title and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media; and (c) any and all proceeds of any of the foregoing, including insurance proceeds or other proceeds from the sale, destruction, loss, or other disposition of any of the foregoing, and sums due from a third party who has damaged or destroyed any of the foregoing or from that party's insurer, whether due to judgment, settlement or other process (capitalized terms used in this Exhibit A that are not defined in this Exhibit A or in the Master Agreement shall have the meanings attributed to such terms in the UCC).

Debtor Initial _____

Secured Party Initial _____

## AUTHORIZATION FOR PREPAYMENT OF SUPPLIER
To the Agreement between:

00037564

Lessor/Secured Party: __CYPRESS FINANCIAL CORP._____, and

Lessee/Debtor: __FIRST CREDIT SERVICES INCORPORATED DBA STANLEY WEINBERG___

So that you, as Lessor/Secured Party, may make the required payment to the supplier(s) of the equipment I have selected in order to initiate the manufacture and/or delivery of the equipment covered by my above referenced Agreement, I certify that I authorize you to make the effective date of the Agreement the date of this Authorization. I understand that despite the fact that the equipment or other collateral has not been received, installed or accepted, this letter authorizes you to start the term of the Agreement and gives rise to my duty perform all of my obligations under the Agreement, including but not limited to making the monthly payments commencing immediately, and providing proof that the equipment or other collateral will be insured upon delivery.

Lessee/Debtor hereby represents and warrants that (i) it intends to be open for business and operating in the normal course within ninety (90) days of the date of this agreement and (ii) it reasonably expects to meet such schedule. Lessee/Debtor acknowledges that Lessor/Secured Party will rely on this representation as part of its credit decision. If it is determined that Lessee/Debtor has falsely represented its intentions or abilities, Lessee/Debtor agrees to pay liquidated damages to Lessor/Secured Party equal to ten percent (10%) of the funding contemplated hereby, in addition to repayment of all amounts advanced by Lessor/Secured Party.

I understand that my duty to make all payments under the terms of the Agreement will arise promptly upon your receipt of this Authorization.

| Signature | Print Name | Title | Date |
|---|---|---|---|
| (X) _[signature]_ | EARL SHIELDS | PRESIDENT | (X) 3/19/07 |

### GUARANTOR'S ACKNOWLEDGEMENT

The undersigned Guarantor(s) acknowledges and consents to the terms and conditions of this Authorization and acknowledges that the undersigned's guaranty of the obligations evidenced by the Agreement and this Authorization remain in full force and effect.

| Signature of Guarantor | Print Name | Date |
|---|---|---|
| (X) _[signature]_ | EARL SHIELDS | (X) 3/19/07 |
| (X) _[signature]_ | LILIANA SHIELDS | (X) 3/19/07 |
| Signature of Guarantor | Print Name | Date |
| Signature of Guarantor | Print Name | Date |
| Signature of Guarantor | Print Name | Date |
| Signature of Guarantor | Print Name | Date |
| Signature of Guarantor | Print Name | Date |
| Signature of Guarantor | Print Name | Date |

**EXHIBIT B**

**GUARANTY**

00037564

CONTINUING GUARANTY
OF THE OBLIGATIONS OF
FIRST CREDIT SERVICES INCORPORATED DBA STANLEY WEINBERG & ASSOCIATES
(THE "<u>BORROWER</u>")
TO CYPRESS FINANCIAL CORP. (THE "<u>LENDER</u>")

For valuable consideration, the adequacy, receipt and sufficiency of which is hereby acknowledged, and because the undersigned (the "Guarantor(s)") will be benefited by the success of the Borrower and have received a guaranty fee or other benefit from Borrower and therefore wish to induce the Lender to enter into one or more finance agreements, loans, installment sales contracts, lease agreements, notes, security agreements, and other financial accommodations or documents with the Borrower (the "Documents"), the Guarantor(s) hereby unconditionally guaranty to the Lender, its successors or assigns (which may include, without limitation, NetBank Business Finance, its successors and assigns) the full and punctual payment and performance when due, whether upon demand, at maturity or earlier by reason of acceleration or otherwise, and at all times thereafter, of all of the advances, debts, indebtedness, obligations and liabilities of the Borrower to the Lender, of every kind and nature howsoever created, arising or evidenced, now or hereafter existing, or due or to become due, whether voluntary or involuntary, direct or indirect, absolute or contingent, liquidated or unliquidated, determined or undetermined, whether the Borrower's liability is individual, joint or with others and whether recovery upon such indebtedness may be or hereafter become barred or otherwise unenforceable for any reason, including without limitation, lapse of the statute of limitations or the bankruptcy of the Borrower (all such indebtedness and obligations being hereinafter referred to as the "Liabilities"). Each of the Guarantor(s) agrees that this Guaranty shall be binding upon such Guarantor even though all signature spaces below may not be filled in or signed, and regardless of any claim that additional persons had agreed to (but did not) sign this Guaranty. Without limiting the foregoing, the absolute and unconditional guaranty by the Guarantor(s) of the Liabilities include the prompt, full and faithful performance and discharge by the Borrower of each and every term, condition, agreement, representation, warranty and provision on the part of the Borrower contained in any of the Documents or in any modification, amendment or substitution thereof. The Guarantor(s) promise to pay all of the expenses incurred by the Lender in endeavoring to collect the Liabilities or in enforcing this Guaranty, including without limitation collection charges, court costs and attorneys' fees.

THE FOREGOING UNCONDITIONAL GUARANTY OF PAYMENT SHALL ALSO EXTEND TO ANY OBLIGATIONS WHICH BORROWER MAY HEREAFTER INCUR TO THE LENDER UNDER ANY AGREEMENT OR BY REASON OF ANY FINANCIAL ACCOMMODATION BETWEEN THE LENDER AND BORROWER MADE AFTER THE DATE HEREOF WHETHER OR NOT PRESENTLY CONTEMPLATED. This instrument shall continue in full force and effect with respect to each Guarantor until terminated by the actual receipt by the Lender of written notice of termination from such Guarantor. Such termination shall be applicable only to transactions having their inception more than fifteen (15) days after the Lender's actual receipt of such written notice, and rights and obligations arising out of transactions having their inception prior to such termination shall not be affected.

This is a guaranty of payment and performance and not of collection. The obligations of Guarantor(s) hereunder are independent of the obligations of the Borrower under any agreement or instrument relating to the Liabilities or any Document and the liability of Guarantor(s) hereunder is primary. If more than one person or entity has signed this Guaranty, the obligations of each Guarantor shall be joint and several. Separate action or actions may be brought against any Guarantor(s), whether or not such action is brought against the Borrower or any other Guarantor and whether or not the Borrower or any other Guarantor be joined in any action or actions. The obligations of Guarantor(s) hereunder are continuing, absolute and unconditional; shall not be subject to any counterclaim, recoupment, set-off, reduction or defense based on any claim the Guarantor(s) may have against the Lender, the Borrower or any other entity; and shall remain in full force and effect until full performance and payment of all the Borrower's obligations to the Lender with interest. Without limiting the foregoing, the Guarantor(s) shall have no right of subrogation, reimbursement or indemnity and no right of recourse to or with respect to any assets or property of the Borrower, unless and until all of said obligations have been paid or performed in full. Nothing shall discharge or satisfy the liability of Guarantor(s) hereunder except the full performance and payment of all the Borrower's obligations to the Lender with interest.

Guarantors(s) hereby waive any right to require the Lender to: (i) proceed against any other person (including without limitation, the Borrower) to enforce the Liabilities; (ii) proceed against or exhaust any security held by the Lender, (iii) pursue any other remedy in the Lender's power, including without limitation any remedies the Lender may have against

00037564

any other guarantors of the Liabilities, (iv) give Guarantor(s) any notice with respect to any collateral repossessed from the Borrower or otherwise realized upon by the Lender, or (v) give any notices in connection with the Liabilities or this Guaranty, including without limitation any notice of acceptance and any and all notices and demands of any kind to which the Guarantor may otherwise be entitled but for this waiver, including without limitation all demands of payment and notice of non-payment, protest and dishonor to the Guarantor, or the Borrower, or the makers or endorsers of any notes or other instruments for which the Guarantor is or may be liable hereunder. Guarantor(s) waive any defense arising by reason of any defense of the Borrower or by reason of the cessation of the Borrower's liability under the Agreement. Without limiting the foregoing, Guarantor(s) expressly waive any and all demands for performance, notices of nonperformance or default and notices of cancellation or forfeiture. The Lender may apply all proceeds received from the Borrower, or others, to such part of the Borrower's indebtedness as the Lender may deem appropriate without consulting Guarantor(s) and without prejudice to or in any way limiting or lessening the liability of Guarantor under this Guaranty. **EACH OF THE WAIVERS SET FORTH ABOVE ARE MADE WITH GUARANTOR(S)' FULL KNOWLEDGE OF THEIR SIGNIFICANCE AND CONSEQUENCES, INCLUDING THAT WITHOUT THESE WAIVERS WE MIGHT BE ABLE TO AVOID FURTHER LIABILITY UNDER THIS GUARANTY UPON THE OCCURRENCE OF AN EVENT TO WHICH A WAIVER RELATES, AND THAT PARTIES HERETO BELIEVE THAT UNDER THE CIRCUMSTANCES THE WAIVERS ARE REASONABLE AND NOT CONTRARY TO PUBLIC POLICY OR LAW.**

Guarantor(s) authorize the Lender from time to time to (i) renew, extend, accelerate, or otherwise change the payment terms, or other terms, relating to the Liabilities, or otherwise modify, amend, change or waive compliance with the terms of the Liabilities or any of the Documents; (ii) accept partial payments on the Liabilities; (iii) take collateral for the Liabilities and the obligations of any other person primarily or secondarily liable on the Liabilities, and exchange, release, realize upon or institute any proceeding to realize upon or liquidate any such collateral; (iv) apply such collateral and direct the order or manner of sale thereof as the Lender may determine in its discretion; (v) release or compromise, in any manner, or collect or initiate any proceeding to collect the Liabilities or any portion thereof; (vi) extend additional loans, credit and financial accommodations and otherwise create additional Liabilities; (vii) enforce or institute any proceeding to enforce any other guaranty of the Liabilities or release, or compromise in any manner the obligations of, any other person primarily or secondarily liable on the Liabilities; and (viii) assign this Guaranty without notice to Guarantor(s). Each Guarantor recognizes that its individual credit history may be a factor in the evaluation of the credit history of the Borrower and the value of this Guaranty, and hereby ratifies, consents to and authorizes the Lender's use of consumer credit reports covering Guarantor, in the past, present and future to the extent the Lender, in its sole and absolute discretion, deems it desirable to obtain such information.

This Guaranty is intended to constitute a valid and enforceable legal instrument. Wherever possible each provision of this Guaranty shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Guaranty shall be prohibited or invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Guaranty. Guarantor will perform such acts and deliver such documents and information as the Lender may request to carry out the purposes of this Guaranty.

This Guaranty constitutes the entire agreement between the Lender and Guarantor(s) with regard to the subject matter herein. This Guaranty may only be amended by a written instrument signed by the parties against whom enforcement is sought. Waiver by the Lender of any provision hereof in one instance shall not constitute a waiver as to any other instance. The use of any gender shall include all other genders. This Guaranty may be signed in multiple counterparts, all of which together shall constitute one enforceable instrument. Any facsimile copy of this document delivered to the Lender shall be enforceable against each of the undersigned as though it were an original document signed and delivered by such undersigned.

All notices or other communications hereunder to or upon the respective parties shall be in writing and shall be delivered by hand to, or mailed by first class United States mail, postage prepaid, certified, return receipt requested, addressed to, or by personal delivery to, or by a reputable overnight courier service addressed to, the addresses specified below or in the applicable Document.

This Guaranty shall be interpreted and all rights and liabilities of the parties arising under or related to this Guaranty shall be determined and governed as to validity, interpretation, enforcement and effect, by the laws of the State of South Carolina, applied without giving effect to conflict-of-laws principles. Without limiting the Lender's right to bring any

action or proceeding against Guarantor(s) in the courts of other jurisdictions, Guarantor(s) hereby irrevocably submit to the jurisdiction of any State or Federal court located in the County of Lexington, South Carolina. **The Lender and each of the Guarantor(s) hereby expressly waive any right to a trial by jury.** This Guaranty shall bind the respective heirs, administrators, representatives, successors and assigns of the Guarantor(s).

00037564

**For Individual Guarantor**
X _[signature]_
Signature (individually, no titles)
Print Name: EARL SHIELDS
Date: X 3/19/07
Social Security Number: X 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

**For Individual Guarantor**
X 3/19/07
Signature (individually, no titles)
Print Name: LILIANA SHIELDS
Date: X _[signature]_
Social Security Number: X 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

**For Individual Guarantor**
X _____
Signature (individually, no titles)
Print Name: _____
Date: _____
Social Security Number: _____

**For Individual Guarantor**
X _____
Signature (individually, no titles)
Print Name: _____
Date: _____
Social Security Number: _____

**For Individual Guarantor**
X _____
Signature (individually, no titles)
Print Name: _____
Date: _____
Social Security Number: _____

**For Individual Guarantor**
X _____
Signature (individually, no titles)
Print Name: _____
Date: _____
Social Security Number: _____

**For Organizational Guarantor**
Name: _____
_____
By: _____
Print Name: _____
Its: _____
Date: _____

**For Organizational Guarantor**
Name: _____
_____
By: _____
Print Name: _____
Its: _____
Date: _____

**EXHIBIT C**

**ASSIGNMENT**

**00037564**

## SEPARATE ASSIGNMENT OF LEASE

In accordance with the terms and conditions of the Master Assignment of Lease Agreement (the "Master Assignment") between the undersigned "Broker" and NetBank Business Finance, which agreement is incorporated herein by reference, Lessor hereby sells, assigns, transfers, and sets over unto NetBank, its successors and assigns, all of Broker's right, title and interest in and to the Lease described below and the Equipment described therein and all documents and schedules connected with the Lease, all payments due thereunder, as further specified below, and all rights and remedies therein, including the right to collect payments due thereunder, to foreclose upon or repossess all Equipment in the event of a default by the Obligor, and the right, either in NetBank's own name or in the name of Broker, to take such legal proceedings or otherwise as undersigned might have taken save for this assignment. Terms not otherwise defined herein, shall have the meanings given in the Master Assignment.

Notwithstanding anything to the contrary in the Master Assignment: (a) the term "Lease" shall also include any finance agreement, loan, lease of personal property, conditional sales contract, promissory note, security agreement, chattel paper and/or other title or lien retention agreement and all related documents in connection therewith, including, without limitation, all schedules, instruments, certificates, exhibits, riders, financing statements or other documents or agreements whatsoever (collectively, the "Lease"); (b) the terms "Equipment", "property" and "additional collateral" shall also include: (i) all equipment leased or financed under the Lease; (ii) all collateral pledged as security for an Obligor's obligations under the Lease, whether by Obligor or another party (such as a guarantor); and (iii) all guaranties, letter-of-credit rights, insurance policies or products, suretyship obligations, or other primary or secondary obligations that support the payment or performance of the Obligor pursuant to the Lease; and (c) the term "rent", "rental obligations" and "rental installments" shall include all payments due under the Lease.

**The Lease:**

Obligor: FIRST CREDIT SERVICES INCORPORATED DBA STANLEY WEINBERG &

Type of Lease:  ☐ Equipment Lease;  ☒ Finance Agreement;  ☐ Other: _____

Number of Monthly Payments Assigned: 36

Monthly Payment amount: $ 2-36@ 8,514.29

Total Lease Receivable (Exclusive of Purchase Option): $ 306,514.44

Purchase Option On Lease: _____

Is Purchase Option Assigned to NetBank? _____

Total amount paid to Broker for Lease: $ 272599.07

Repurchase Amount: All unpaid monthly payments discounted to present value at a discount rate of 8.0 percent per annum, plus such other amounts as are set forth in the Master Assignment.

If the Purchase Option ("Residual") price was excluded from this assignment, NetBank will, upon receipt in full of all monthly installments and all other amounts due under the Lease, reassign the Lease to Lessor so long as the Lessor is not in default under the Master Assignment or Broker Agreement.

ACCEPTED BY:

BROKER: Cypress Financial Corp

Signature: _____  Print Name: CARMELA CAMERON  Title: VICE  Date: 3/23/07

NETBANK BUSINESS FINANCE:

Signature: _____  Print Name: J. Miller  Title: Director of Funding  Date: 3/28/c